```
 1  DRATH, CLIFFORD, MURPHY & HAGEN, LLP
    JOHN M. DRATH (State Bar No. 045031)
 2  1999 Harrison Street, Suite 700
    Oakland, California  94612-3517
 3  Telephone: (510) 287-4000
    Facsimile: (510) 287-4050
 4
    Attorneys for Defendants
 5  HANDLER, THAYER & DUGGAN, LLC and
    THOMAS J. HANDLER J.D., P.C. (erroneously sued
 6  herein as THOMAS J. HANDLER, individually)
 7
 8
                        UNITED STATES DISTRICT COURT
 9
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11
12
    GREGORY R. RAIFMAN, individually and as  )   No. C07-2552 EDL
13  Trustee of the RAIFMAN FAMILY REVOCABLE  )
    TRUST DATED 7/2/03; SUSAN RAIFMAN,       )
14  individually and as Trustee of the RAIFMAN)
    FAMILY REVOCABLE TRUST DATED 7/2/03;     )
15  and GEKKO HOLDINGS, LLC, an Alaskan limited)
    liability company, dba GEKKO BREEDING AND)
16  RACING,                                  )
                                             )   MEMORANDUM OF POINTS
17               Plaintiffs,                 )   AND AUTHORITIES IN
                                             )   SUPPORT OF MOTION TO SET
18        vs.                                )   ASIDE DEFAULT [FRCP 55(c)]
                                             )
19  CLASSICSTAR, LLC, a Utah limited liability)
    company; CLASSICSTAR FARMS, LLC, a       )
20  Kentucky limited liability company; BUFFALO)
    RANCH, a business entity form unknown;   )
21  GEOSTAR CORPORATION, a Delaware          )
    corporation; S. DAVID PLUMMER; SPENCER D.)
22  PLUMMER, III; TONY FERGUSON; THOMAS      )
    ROBINSON/ JOHN PARROT; HANDLER,          )
23  THAYER & DUGGAN, LLC, an Illinois limited)
    liability company; THOMAS J. HANDLER;    )
24  KARREN, HENDRIX, STAGG, ALLEN &          )
    COMPANY, P.C., a Utah professional corporation,)
25  f/k/a/ KARREN, HENDRIX &                 )
    ASSOCIATES, P.C., a Utah professional    )
26  corporation; TERRY L. GREEN; and DOES    )
    1-1000, inclusive,                       )
27                                           )   DATE      : 08/28/07
                 Defendants.                 )   TIME      : 9:30 a.m.
28  _____)   COURTROOM :   11
```

## I. INTRODUCTION

This is an action by an investor in a horse breeding program against the owners and operators of the program, an accounting firm and a law firm and one of its principals. The action is based on multiple claims for relief, including RICO violations, common law fraud, and negligence. The action was filed on May 14, 2007 and, on July 11, 2007, a clerk's default was taken against the attorney defendants THOMAS J. HANDLER ("HANDLER") and HANDLER, THAYER & DUGGAN ("HTD"). Those defendants were served on May 24, 2007. As will be shown, the failure to file a timely response to the complaint was the result of a mistake of fact on the part of defendants and excusable neglect on the part of their counsel. Accordingly, defendants seek to have the default set aside, and their answer accepted for filing.

## II. FACTS RELATING TO ENTRY OF DEFAULT

The defendants were served on May 24, 2007 by service on HANDLER. That same day, HANDLER sent the complaint and the other papers with which he had been served by Federal Express to his liability insurer, GREAT AMERICAN INSURANCE COMPANY ("GREAT AMERICAN"), to the attention of SCOTT STAINS ("STAINS"). In his cover letter, HANDLER advised his carrier that he had received the complaint on May 24, and that a response was due on June 14. STAINS received the Federal Express package on May 25, 2007 and, although he read HANDLER's letter, he erroneously thought that the firm had merely received the complaint in the mail, and that service had not been effected.

STAINS contacted JOHN DRATH ("DRATH") of the firm of DRATH, CLIFFORD, MURPHY & HAGEN ("DCMH") by email on June 1, 2007, asking if DRATH had any conflicts that would prevent him from defending the case on behalf of the HANDLER firm. As DRATH was about to begin a lengthy jury trial, he forwarded the email to his paralegal assistant, ROBERTA BEACH ("BEACH"), with instructions to clear conflicts and to go on line with PACER to see if there were any deadlines to be attended to. BEACH cleared conflicts and then notified STAINS of that fact. She also checked the file through PACER and found no reference to any deadlines. As STAINS said he would be forwarding the file material, she took no further action, intending to set up the file and discuss the matter with DRATH when the material came in. Customarily file material

will arrive within a few days of the initial contact. STAINS advised HANDLER that defense counsel had been retained, but he was not given the name of defense counsel at that point.

DRATH was assigned to a trial department on June 4, 2007 in the matter of *Housley v. California Highway Patrol*, San Francisco Superior Court No. 04-428975 before Judge Ernest Goldsmith in Department 613. The case did not go to the jury until July 10, and a verdict was rendered late in the day on July 11, 2007. The only communication he received from STAINS throughout that trial was an email on July 4, 2007 advising that a formal engagement letter would be sent the next day, and it was. There was no mention of service. This letter, along with a copy of the complaint, was received in the DCMH offices on Monday, July 9, 2007. Nothing in the letter mentioned if or when service had been effected.

DRATH returned to his office the morning of July 12 and began going through correspondence and files which had arrived while he was in trial. Towards the end of the day he turned his attention to this matter and went on line to see what, if any, activity had taken place by that time. It was then that he learned that a default had been taken against his clients the previous day. On the following day he wrote to plaintiffs' counsel to advise him of his representation and his intention to move to set aside the default.

### III. FACTS RELATING TO MERITORIOUS DEFENSE

According to the complaint, the plaintiffs are evidently high net worth individuals residing in Piedmont, California, and on November 20, 2003, they ventured into the thoroughbred business by committing to investing 3.4 million dollars with the CLASSICSTAR defendants (Complaint, Para. 83). The first payment was on November 26, 2003 (Complaint, Para. 61), and the last was either on December 26, 2003 (Complaint, Para. 61) or January 5, 2004 (Complaint, Para. 84). The payments were made to defendant CLASSICSTAR. The CLASSICSTAR "Mare Leasing Program" is described in the complaint as one in which the individual leases certain high end mares with the rights to acquire ownership of that mare's foals. The plaintiffs understood that the benefits included the potential for significant profits, and favorable tax treatment. Plaintiffs contend that this latter benefit was given "legitimacy" by the opinions of a law firm (HTD) and an accounting firm (KARREN, HENDRIX). The plaintiffs further contend that assurances of the tax benefits were

1  personally given to them by HANDLER.

2  The complaint goes on to allege that at some point after investing with CLASSICSTAR, defendant FERGUSON, on behalf of CLASSICSTAR, allegedly because CLASSICSTAR had sold the lease rights to more mares than it owned, encouraged the plaintiffs to exchange their mare rights for ownership interests in performance quarter horses. This was represented by FERGUSON as a "no lose" deal, and in reliance on FERGUSON's representations, the plaintiffs agreed to this exchange in January, 2005. (Complaint, Para. 95). FERGUSON also represented that this would be a "like kind Exchange" so as to preserve their tax benefits. (Complaint, Paras. 93, 94). This turned out to be a poor decision as the plaintiffs learned in the Fall of 2006 that the performance quarter horses did not exist.

HTD is a Chicago law firm, and HANDLER is one of its principals. HANDLER is an estate planning specialist. HTD also has attorneys whose practices include a tax emphasis. In 2001 the firm began doing legal work for the defendant CLASSICSTAR and, in 2004, the firm was asked to provide tax opinions for certain clients of CLASSICSTAR, including the plaintiffs herein. The firm understood that these clients already purchased the rights to foals in the CLASSICSTAR "Mare Lease Program," and the opinion was for the 2003 (i.e. prior) tax year. On February 4, 2004, one of the HTD attorneys (not HANDLER), issued a lengthy tax opinion to the plaintiffs setting forth the applicable regulations and case law applicable to their horse ownership activities. The gist of the allegations against the firm is that the opinion was not valid and that it was used by the CLASSICSTAR defendants to market and promote participation in their Mare Lease Program. The firm, however, stands by the validity of that opinion, and the full text of it is attached to the accompanying declaration of James Duggan of HTD. This opinion was rendered *after* the plaintiffs made their 3.4 million dollar investment in CLASSICSTAR.

The plaintiffs go on to allege that at some point the IRS issued a notice of disallowance. Although no discovery has taken place, it is probable that the disallowance relates to expense deductions the plaintiffs have taken for horses which do not exist. If true, that would be unrelated to the validity of the tax opinion rendered by these defendants.

HANDLER never prepared any tax opinion for the plaintiffs. He is an estate planning

specialist. However, he is also a horse breeder and an investor, like the plaintiffs, in the CLASSICSTAR Mare Leasing Program. On December 18 and 19, he and other CLASSICSTAR investors attended an educational conference hosted by CLASSICSTAR in the Virgin Islands, and while there gave a talk on the general subject of Estate Planning. While it is possible that he met one or more of the plaintiffs at one of the social gatherings that took place during that conference, he has no memory of doing so. Any discussions he would have had with any fellow attendees at that conference would have been in a social setting, and not on behalf of any defendant in this action, either directly or indirectly. If the subject of the tax treatment for horses in the CLASSICSTAR program came up, he would have voiced his personal understanding that there were certain federal tax benefits. That remains his understanding. This conference took place *after* the plaintiffs had committed to their investment in CLASSICSTAR and after they had made their first payment.

Although set forth in a variety of theories, including fraud and negligence, the gist of the claim against HTD is that the firm rendered a tax opinion upon which the plaintiffs relied to their detriment. There are several obvious defenses to this claim. First, the written opinion was given to the plaintiffs over two months after the plaintiffs executed the "Letter of Understanding" (complaint, Para. 83), and over one month after the plaintiffs made their final payment to CLASSICSTAR. Second, regardless of the theory of recovery, the claims against the law firm fail if the tax opinion was valid when given, and the firm insists that it is. Where an attorney has engaged in a process of reasoned analysis leading to a conclusion, exercising the skill and care of a reasonably competent and careful attorney, judgmental immunity will protect the attorney from liability if the opinion or judgment later proves incorrect. *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 985.

Finally, the premises upon which the tax opinion was rendered were materially altered when the plaintiffs changed the terms of their arrangement with CLASSICSTAR by agreeing to an exchange (the "no lose" proposition). The law firm is being sued for an opinion given in 2004 based on a business relationship entered into in 2003, but which was evidently abandoned by the plaintiffs one year later in favor of a different program that they were convinced would provide, in essence, a guaranteed return. There is no allegation that the law firm was asked to provide a tax analysis of

that new business arrangement.

As for HANDLER, he should not be in this litigation at all. He is not a tax attorney and did not render any tax advice. Whatever comments he may have made based on his *personal* (as opposed to *professional*) understanding that there were tax benefits are not actionable, and in any event were uttered *at the earliest* after the plaintiffs had already made their first payment to CLASSICSTAR. It was HANDLER's understanding that everyone at the Virgin Islands conference was already an investor in the CLASSICSTAR program, and in the case of the plaintiffs, that was true.

### IV. AUTHORITY TO SET ASIDE DEFAULT

Rule 55(c) of the Federal Rules of Civil Procedure provides:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set is aside in accordance with Rule 60(b).

Since provisions for relief are remedial in nature, they must be liberally applied. *In re Hammer* (9th Cir., 1991) 940 F. 2d 524, 525. Default judgments are generally disfavored and cases ordinarily should be decided on their merits. *Pena v. Seguros La Comercial, S.A.* (9th Cir. 1985) 770 F2d 811, 814.. Where a defendant seeks timely relief from the default judgment and has a meritorious defense, doubts should be resolved in favor of granting the motion to set aside the judgment. *In re Hammer, supra*; *Schwab v. Bullock's, Inc.* (9th Cir., 1974) 508 F. 2d 353, 355.

In considering what constitutes "good cause", the courts generally require a demonstration of mistake, inadvertence, surprise or excusable neglect. *Chrysler Credit Corp. v. Macino* (7th Cir., 1983) 710 F. 2d 363, 368. Where a default judgment is obtained because of a mistaken understanding of the facts concerning the duty to respond, relief may be granted. *999 v. Cox & Co.* (ED MO 1983) 574 F. Supp. 1026, 1029. Examples of mistakes of fact include defense counsel's reliance on the client's mistaken statement as to the date the summons was received (*999 v. Cox, supra*) and a defendant's mistaken belief that corporate counsel for the parent company was going to be answering the complaint (*Williams v. Campbell Chrysler-Dodge, Inc.* (ED TN 1982) 96 FRD 547. In this case, HANDLER was of the belief that his insurance carrier had assigned defense counsel and that a timely response to the complaint would be made. Similarly, BEACH of DCMH

was of the impression that service had not been made because no mention of that fact was made by STAINS of GREAT AMERICAN. STAINS, in turn, had (erroneously) assumed the complaint had been sent by mail to HTD, as is customarily done in legal malpractice actions; and that since HANDLER was not a litigation attorney, he did not appreciate that mailing a complaint to a defendant did not constitute service.

Excusable neglect is another grounds for setting aside a default. At least for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership* (1993) 507 U.S. 380, 394. Excusable neglect by counsel is a basis for relief. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, supra.* Here, defense counsel did not know that service had been effected. He should have directed that specific inquiries be made as to the fact of service and BEACH should have made those inquiries herself. However, their experience with this particular insurance company was such that if service had been effected, that information would invariably be included at the time of the initial contact, as well as in the initial letter transmitting the file. Neither communication mentioned service, because in fact the claims representative had (erroneously) assumed that service had been by mail, and that a response would not be due until the acknowledgment of service was returned to the plaintiff's counsel. Assigned counsel DRATH started trial on the Monday following the inquiry the preceding Friday, and his focus was on that matter until it was submitted to the jury on July 10. He did not turn his attention to this matter until July 11, while the jury was deliberating.

Grounds for denying relief include prejudice to the plaintiffs, lack of a meritorious defense, culpable conduct by the defaulting party which caused the default to be entered, and untimeliness. *American Association of Naturopathic Physicians v. Hayhurst* (9th Cir., 2000) 27 F. 3d 1104, 110801109. *Effjohn Int'l Cruise Holdings, Inc. V. A&L Sales, Inc.* (5th Cir. 2003) 346 F.3d 552, 563. None of those grounds exist here. This case was only filed two months ago, and there has not been an initial case management conference. Rule 26 disclosures are not yet due. There is a pending motion to stay proceedings pending assignment to multi-district litigation. The plaintiffs would not be prejudiced by the granting of relief. The defendants have a good and complete

meritorious defense. It is not necessary that the defendants show that they *will* prevail, only that there is a *bona fide* chance that such a result would occur. *Hritz v. Woma Corp.* (3d Cir. 1984) 732 F2d 1178, 1181. The default was not the result of culpable conduct on the part of the defendant. Conduct is not culpable where the defendant "offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process.". *TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F3d 691, 697. This motion is being filed within days of the default being entered.

## V. CONCLUSION

The failure to file a response in this case was due to a series of mistaken assumptions on the part of the defendant, his insurance carrier and appointed counsel. These actions constitute both mistakes of fact and excusable neglect. In view of the absence of any prejudice to the plaintiff, the meritorious defense and the timeliness of this application, the court is urged to grant the relief sought.

DATED: July 23, 2007                              DRATH, CLIFFORD, MURPHY & HAGEN, LLP

By_____
JOHN M. DRATH
Attorneys for Defendants
HANDLER, THAYER & DUGGAN, LLC and
THOMAS J. HANDLER, J.D., P.C.

R:\75\3048\PPmfr001.jmd.wpd